IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
~~EASTERN~~ DIVISION
*Aberdeen*

**FILED**

JUL - 9 2014

DAVID CREWS, CLERK
BY _____ Deputy
Plaintiffs

DAVID J. WHITEFOOT and
ELENA R. WHITEFOOT

VS.

Sheriff of Clay County, individual and official capacity;
Eddie Scott, Brad Pettit, and Frank Williamson,
Deputy Sheriffs in individual and official capacities; Cecil
Simmons, individual state actor; Simmons Mobile Home
Service LLC Corporate state actor; Terry Simmons an
Individual, state actor; Judge Lee J. Howard, in individual
Capacity;  Jeff Rawlings, an individual state actor.

Cause No: 1:14CV113-SA-DAS

Defendants

**Jury Trial Demanded**

**COMPLAINT**

**"First Incident"**

This is an action to recover actual and punitive damages for violation of Fourteenth Amendment Procedural Due Process Rights inter alia state Law claims of criminal trespassing, willful malicious trespass, criminal cutting of pine trees, civil conspiracy, destruction of plants, sod, fence line, illegal aiding and abetting a private, criminal self help, criminal taking/theft of property by sheriff;  illegal acts by an attorney, without authority of client or court, as a state actor in a symbiotic interdependent relationship with a judge, Sheriff Department and other state actor individuals, who in concert, conspired to conduct, did conduct an illegal clandestine theft by Burglary and Robbery in our presence, by threat of force, of personal  property worth thousands of dollars from our homestead, a violation of Constitutional Procedural Due Process Clause of the Fourteenth Amendment under color of law, absent all jurisdiction.

**"Second Incident"**

Trespassing by  Sheriff Scott upon private posted property, to serve by fraud, an illegal process summons per se, then file perjuries on return, all acts committed in violation of Fourteenth Amendment procedural due process clause, with a Clay County Deputy acting under color of law,  cloaked under authority of Clay County Sheriff, all which deprive Elena Whitefoot,

1

of her right to liberty by fraudulent process service upon her, and violation of our, David and Elena Whitefoot's right to privacy on private real property from illegal acts of Sheriff.

 Plaintiffs are acting pro se and refer to themselves in the following as: Elena, I, we, us, our, me.

## JURISDICTION OF PARTIES

1.     Plaintiff, David Whitefoot is an adult resident citizen of 5518 Bilbo Cartee Road, Cedar Bluff, Mississippi, 39741

 2.     Plaintiff, Elena Whitefoot is an adult  resident citizen of 5518 Bilbo Cartee Road, Cedar Bluff, Mississippi,  39741.

3.     Defendant Eddie Scott, sued in both incidents, is "Current holder of Sheriff's Office in Clay County" in Second Incident, but was "Chief Deputy in First Incident ". He is sued in his official and personal capacities as sheriff and as chief deputy.  He can be served process at his place of employment at 330 W. Broad St. West point, Mississippi 39733.

3-a.     Defendant " Clay County Sheriff" at all times relevant in "First Incident" is sued in official capacity as final decision maker on all legal decision in Clay County and is served process by serving current holder of Sheriff's Office.

4.     Defendant Brad Pettit was at all times relevant, a Deputy Sheriff with Clay County Sheriff Department in "First Incident" only.  He is sued in his official and personal capacities and can be served with process at place of employment at 330 W. Broad St., West Point, Mississippi 39773.

5.     Defendants Cecil Simmons and Simmons Mobile Home Service, in "First Incident" only. Cecil Simmons is an individual resident citizen of New Albany, Union County Mississippi, and at all relevant times, was a mobile home puller/hauler and founder/owner of Defendant Simmons Mobile Home Service LLC, a private domestic corporation incorporated in 2010.  Both Defendants are sued as state actors. Both can be served process at their place of employment and corporate headquarters at 1236 County Line Road 143, New Albany, Mississippi 38652.

5-a.     We further state that Simmons Mobile Home Service LLC (SMHS) was at all times relevant a separate entity from Cecil Simmons. Separate corporate entity SMHS was hired by Defendant Rawlings, purportedly for Green Tree Servicing LLC to pull the Home after separate entities state actors Cecil Simmons and Terry Simmons by Burglary, and Robbery by threat of force, took a Manufactured Home from us, working for/with the Sheriff, under protection of same, in a symbiotic interdependent relationship, with entwined goal, as described.

5-b.     SMHS was not employed by Rawlings to physically remove Home, but only to pull same after sheriff and state actors Cecil Simmons and Terry Simmons, illegally helped steal the

2

Manufactured Home, and transferred same to SMHS purported to be the representative of Green Tree Servicing LLC, but revealed herein to be personally for Rawlings after Rawlings because of his illegal, fraudulent acts, ceased by law, to represent Green Tree Servicing LLC.

5-c.    We further state: SMHS supplied the equipment, vehicles and two other employees to aid/abet Rawlings, Sheriff, Scott, and separate entities Cecil Simmons and son Terry Simmons acting in sync, in concert, physically cut Home from our property in clandestine self-help theft. Thus Cecil Simmons and Terry Simmons worked as separate entities, with separate entity SMHS's equipment and employees, a male and a female, all intermingled, all on behalf of sheriff, to extract Home to put same in hands of Rawlings by and through SMHS, the entity who then pulled Home away from our property, as Rawlings supplied SMHS to Sheriff to do.

5-d.    Thus Cecil Simmons and Terry Simmons, and SMHS, are sued as three (3) separate individual entities, acting as individual state actors, under protection of deputies.

5-e.    We further state, that current law is that any member, manager,  agent, or employee of a LLC will be held personally liable for negligent, fraudulent,  illegal acts or misconduct committed by him/her, or any person under his/her direct supervision or control, while committing illegal acts on behalf of the LLC.

5-f.    Thus we are herein holding  Cecil Simmons and Terry  Simmons personally liable for their illegal, criminal acts against us, and SMHS as a separate entity for conspiring with all defendants by supplying equipment and its employees to help steal the Home, so SMHS alone, could receive the Home from sheriff, to pull for Rawlings.

6.    Defendant Terry Simmons is an individual resident of Union County, New Albany MS in "First Incident" only, and at all times relevant was an individual state actor with Defendants Cecil Simmons and SMHS. He is sued as a state actor, acting under color of law, in symbiotic, interdependent relationship with all other Defendants. He may be served process at his place of employment at 1236 County Line Road 143, New Albany, Mississippi 38652.

7.    Defendant Jeff Rawlings(Rawlings) is an individual Mississippi, Attorney in" First Incident" only. He is a resident citizen of Madison County, Madison Mississippi.  He is sued as a state actor, acting under color of law, with Defendant Judge Howard,(Howard),  absent all jurisdiction, in symbiotic relationship with Sheriff, and Scott, with entwined goal of illegally, by Burglary; Robbery in our presence by threat of force, by removing affixed Home from our homestead,  in violation of out Fourteenth Amendment Procedural due  process rights.

7-a.    We further state that defendant Rawlings was the primary author of two (2) moot final judgments in replevin, in concert with Howard knowing both Judgments moot, and was the instigator of the clandestine Burglary, theft by unlawful entry, Robbery by threat of force, to

3

illegally remove Home from our property, which amounted to theft of same, as described in Complaint, since/because he had exceeded the authority of his client who hired him and expected him to act legally, within state and federal law on its behalf. He can be served process at his place of employment at Hwy. 51, Madison, Mississippi 39130.

7-b.    We further state that Rawlings was at all times relevant, a partner/member of Rawlings and Macinnis Law Firm P. A. That Rawlings was at all times relevant the legal representative, special agent, of Green Tree Servicing LLC, (G.T.) "until" he went rogue, went beyond his authority for same, in the Replevin Action filed against Roan Whitefoot, details to be shown in complaint, which turned into crimes against us, thus Rawlings was no longer the legal representative of G.T. thus is liable to us as an individual state actor.

7-c.    We further state, G.T. is not a Defendant Herein because: there is no direct evidence that G.T. knew of Rawlings illegal actions on its behalf, same necessary to ratify, condone Rawlings illegal actions. The only evidence is that Green Tree hired Rawlings to obtain the Manufacture Home in question in a legal manner.

7-d.    Else, why hire an attorney,( instead of a repo agent), to file a legal replevin action, then allow that attorney after all the time and expense, to revert to a repo agent, to commit a completely illogical criminal theft by Burglary, and Robbery for same, when a repo agent would have been much less expensive and time consuming, and more experienced in such a theft.

7-e.    We further state: Rawlings reverted to the rogue self-help endeavor after his Bankruptcy strategy for G.T. was successful to remove Roan as an obstacle to the Home, but not us. But instead of continuing to deal with us, as he started to do originally, recognizing that we were the true, one and only obstacle in his client's way to the Home, Rawlings let Defendant Howard entice him instead, with his circuit judge authority and mystic, to continue to proceed illegally against Roan, to appease Howard's vendetta against me,  same which promised Rawlings a sure way to the Home around paying me for damages.

7-f.    We further state, that G.T. a prestigious financial corporation worth millions, would not have hired Law Firm expecting same to violate Mississippi law and the constitution of the United States in such an illegal, grievous manner, on their behalf, to extract, by theft, as described, a Home with a true market value of about $10,000, more or less.  No one can lawfully authorize another to violate the law.

7-g.    Thus Rawlings is sued herein as an individual state actor, acting in concert with a state judge and a county sheriff in concert with other deputies and individual state actors, in a symbiotic interdependent conspiracy to commit horrific illegal acts against us, as an individual state actor himself, in concert with said law officials inter alios against us, thus liable to us for damages pursuant to U.S.C. 42 sec.1983 inter alia, state laws, as Complaint will show.

8.     Defendant Lee J. Howard is and was at all times relevant a Circuit Court Judge in "First Incident" only. He is sued in his personal capacity, for committing illegal acts absent all jurisdiction in concert with other Defendants, with entwined goal of removing a manufactured Home from our property, carried out by Burglary and Robbery, to be shown in Complaint.

8-a.     Howard can be served process via the Mississippi Attorney General's Office, Walter Sellers Building, 550 High Street, Suite 1200, Jackson, MS 39201. Complaint will show horrific illegal acts by Judge Howard against us, by personal vendetta, acting absent all jurisdiction, thus by said illegal acts, as an individual, not a Judge, has relinquished his Absolute Judicial Immunity shield of protection from suit under U.S.C .42, sec.1983 inter alia state statutes.

9.     Defendant Frank Williamson, at all times relevant was a Deputy Sheriff civil process server with Clay County Sheriff's Department in "Second Incident" only. He is sued in official and individual capacities. He can be served process at his place of employment at 330 W. Broad St., West Point, Mississippi 39773.

10.     This Court has federal question jurisdiction under 28 U.S.C. sec. 1331 and civil rights jurisdiction under Title 42 U.S.C. sec. 1983 over our (Plaintiff's) claims for violations of our rights under the United States Constitution. This Court also has supplemental jurisdiction over our state law claims.

### FACTS OF FIRST INCIDENT

11.     On January 23, 2010, a friend visiting our son Roan Whitefoot's (Roan) was served a replevin action (replevin) as John, meant for Roan and John Doe(s) The John Doe (s) on the replevin was/were never clarified by amendment of complaint etc. However, we were owners of the property Roan's seventy five (75) foot, by sixteen (16) foot Manufactured Home (Home) was attached, and which the replevin was for. The Home had been affixed to our real property homestead for about ten (10) years by Green Tree Servicing LLC's (G. T.) assignor Conseco for Roan, not us. Roan had no ownership rights or interest in our real property, and we had no legal title, security agreement (S/A) obligation, or any monetary obligation or ownership interest in the Home.

12.     Roan was never served process after his friend was served. The court proceeded with the replevin, although process wrong. I filed a petition to intervene to protect our property from damage in case of an unannounced illegal self-help removal which might damage our pine tree crop and other property. My petition was not honored by the court, as if I never filed it.

13.     In February 2010, Roan filed chapter 7 Bankruptcy (BankR) and stopped the action. G. T. was the financial Institution that held the defaulted S/A on Home. Jeff Rawlings (Rawlings) G.T.'s attorney filed a successful motion to lift automatic stay (stay), and abandon Home.

However, the S/A, G.T. held was retained in Roan's BankR estate, to which the stay still applied. Thus the abandoned Home no longer had a S/A attached, and was no longer in default, that any legal action could attach. Any legal action on S/A debt on Home was stayed, until discharge. Thus Roan no longer legally obligated to G.T. for the S/A debt.

14.      In spite of above revelations, Rawlings resumed the replevin, which was a claim that Roan's S/A was in default, and maintained possession against G.T.'s interest, both claims rendered moot by BankR results Rawlings' BankR motion, against Roan. Rawlings filed a hearing on same, to determine the rights of the parties as to the possession of the Home.

15.      Replevin was now moot because: the S/A remained in BankR, to be discharged. Roan had filed intentions to reaffirm the debt but G. T. refused, and the BankR Court agreed with Rawlings. Thus the Home had been abandoned by RankR rules. Since Roan now had no right to Possession, the right to possession of Home now belonged to us, simply because same was in our legal possession, legally attached to our real property.

16.    The replevin for state court to grant G. T. rights to possession of the Home was now unnecessary, redundant and moot. Roan no longer had any rights in the Home. The Home could not have been abandoned to anyone except to the owners of the property upon which it was attached. If G.T. had had possession of the Home, or a S/A upon the real property to which it was attached, the Home would have been abandoned to possession of G.T. Rawlings had continued a replevin against Roan's secured debt, which was now protected by the stay, and the Home which Roan no longer possessed, but which we possessed by the fact it was attached to our real property.

17.      Abandonment of the Home by BankR Court could not change the facts of state law wherein we still had legal possession of Home, not G.T. However, G.T. was now free to file action against us for the Home, if same thought it had a law to support its claim against our possession of Home. But no amount of action against Roan could grant G.T. possession of Home against our legal possession.

18.      Neither the BankR decision, nor the replevin against Roan could grant G.T. possession of Home, with right to take same off our property. Any actions whatsoever to remove the Home without out permission, under the circumstances that existed, would be a criminal act.

19.      Before filing Bankruptcy, Roan had filed a response on the improper service of process, and demanded a jury trial if case not dismissed. However, after stay lifted and reaffirmation refused, and we obtained rights as to possession of the Home, Rawlings scheduled a hearing for April 7, 2010, on moot replevin, to determine the rights as to possession of the Home between G.T. and Roan, instead of filing an action against us, the now absolute legal possessors of the Home. In addition, the moot replevin alleged Roan owed G.T. $23,000 for Home, and held

6

Home against G.T.'s interest. Both claims absolutely false, the alleged $23,000 still protected by stay to be discharged, and the refusal to reaffirm Roan's S/A ended Roan's rights to Home.

20.     Several weeks before the hearing, but after BankR results had determined the parties rights as to possession of the Home, I hired long time West Point Attorney Josh Stevens (Stevens), now deceased, to settle the matter between us and Rawlings, for G.T. as to agreeing with us, pursuant to Miss. Code 72, UCC Code 75-9-604 which mandated G. T. to make assurances of payment of any excess damages to our real property in return for allowing G. T. to remove the Home without further adieu, or sell the Home for value.

21.     Said UCC 75-9-604 (d) is based upon the premise that if there is a defaulted S/A, on a fixture attached to real property, but the party in default does not own the real property upon which the defaulted fixture was affixed. Thus the holder of defaulted S/A could remove its collateral, but must arrange to pay the property owner for excess damages caused by removal. That the property owner could refuse removal until assurances made for payment of same. However, since Roan's S/A debt was at time protected by stay, to be discharged, then the question is: would Roan's S/A still be in default at time? Regardless, we offered G.T. the Home.

22.     State law shown gave G. T the right to come onto our property and remove the Home, with stated conditions, if in default. Or, we could allow G. T. to remove the Home by agreement, which we attempted. But, G.T., nor anyone whomsoever, could remove the Home without our permission, by state law mentioned if Roan's S/A in default. If S/A not considered in default, and we had not given anyone permission to remove the Home, then G.T. would have to file a cause of action against us, and prevail in same, to remove home from our property.

23.     I had heard from Stevens that Rawlings had verbally agreed G. T. would pay for excess damages to our property. However, without informing me/us, for approval, Rawlings and Stevens signed an Agreed Final Judgment (AFJ) on the moot replevin, drawn up by Rawlings, who then mailed same to the Howard, for Howard's approval, even though Howard no longer had jurisdiction, since replevin now moot, as to rights to Home between us and G.T. Howard definitely had no jurisdiction of any agreement concerning us and G.T. on the Home.

24.     Stevens had signed the moot AFJ in secret. He knew I would not have agreed, (without some vital changes, which could have been done), because of the BankR decision, which we had discussed. The AFJ was senseless to draw up, senseless to sign, senseless to remit to Howard, who had no jurisdiction now over the Home nor me/us, and it was even more senseless/illegal to proceed with the moot replevin against Roan, which a judgment against him was. Or include me/us in the moot judgment on moot replevin. In addition, Stevens did not represent Roan, only us/me. I had expected Stevens to agree to a settlement between us and

7

G.T. only, for us to allow removal of Home for payment for damages, same which Stevens understood, and he said Rawlings agreed to also, verbally.

25.     Since the moot April 7, 2010 hearing had not been canceled, in writing, from clerk, although Stevens and I considered it moot, I decided to go to the Courthouse just to see if a moot hearing was actually held, not trusting what Howard might do since I was involved, and we were pro se, which all knew Howard loathed.  Roan decided to go with me just for company and out of curiosity. Since neither Howard nor Stevens nor Rawlings were in the Courthouse, and there were no signs of a hearing, Roan and I decided there would be no hearing.

26.     We were in the parking lot outside courthouse, on the verge of leaving when the clerk summoned Roan and me into a small building, adjacent to parking lot.  Roan was asked to sit in the front at a table and I was told to set 20 feet behind. Because it was the court clerk, we followed instructions, not sure, but thinking we were just going to discuss the situation about BankR etc, and our intentions to settle the matter with Rawlings for G.T., since the replevin was now moot. We did not expect this to be a hearing on the replevin per se, for reasons shown.

27.     Howard came in and commenced talking. Since we were not in Courthouse, but Howard was a judge, we respectfully listened to Howard. It then became evident Howard was conducting a hearing on the moot replevin, with just Roan and I present.  I arose to speak, to remind Howard of BankR consequences, and moot replevin, and advise him of my verbal agreement with Rawlings via Stevens, and that if this was a hearing, Rawlings should be present, since he scheduled same, so case should be dismissed and hearing, or whatever this meeting was, should be adjourned.  Howard shut me up before I could utter a single word.

28.     No! Mr. Whitefoot, I am not going to let you speak, this is not your concern, so just sit down, and don't interrupt. You will have to stay out of this issue. You will have to file a separate action for your issue, etc. Your issue has nothing to do with this issue. Howard admonished me, twice, with a stern look.  I had no choice but to set down, keep quiet, and let Howard hold the bogus hearing. In addition Roan was like a fish out of water in such a legal setting and Howard knew that. Roan just kept quiet unless spoken to, only to answer Howard's strange questions.

29.     Later, Stevens, also exasperated with Howard's vendetta against me, which he was aware of because of a present case in court, in which the court illegally ordered me, via a family member to hire counsel. Said vendetta had interfered with that case, all knew, and herein in Stevens' and Rawlings attempts to settle this matter for me. He alleged that Howard had the AFJ in possession at time of senseless hearing, "but" did not approve of the part that said we were defendants because the Home was attached to our property, and that G.T. agreed to pay us, in particular me, for excess damages. That Howard had informed them that the AFJ would not be approved just for that reason, that I would be paid nothing for interfering in case.

8

30.     That we were not expected in court at the hearing, in which case he (Howard) would approve the replevin against Roan. That he and Rawlings did not have to attend, since Rawlings lived so far away, (over 100 miles), that's why they were not in town. It was all a set up. That if we did attend, Howard would hold an impromptu hearing, thus did not reserve the Courtroom for the hearing, not expecting Roan, so when Roan and I were spotted in the parking lot by the clerk, assuming we were there for the hearing, Howard held the impromptu hearing just for us in the auxiliary building. Howard knew from Stevens I was unaware of the AFJ.

31.     Howard commenced the unwanted, moot hearing to finagle Roan, evidence proves, into disagreeing with the gist of AFJ without telling Roan/me same existed, so he could later use the AFJ as an excuse, by denying same, to order me out of the case, to continue the litigation because Roan indicated in the (moot) hearing that he (sic) wanted a jury trial, and that Stevens had not properly entered (sic) case, all so he could continue to litigate to issue an exact worded final judgment, excluding only the part to pay me for property damage, because of vendetta.

32.     When, Howard's vendetta became apparent to Rawlings, as it did because of the denied AFJ Rawlings drew up to accommodate our constitutional procedural due process inter alia state rights, Rawlings threw in with Howard to save having to pay us damages. All actions afterwards supports/proves this Howard and Rawlings meeting of minds, and merging of goals.

33.     As for the moot hearing itself, knowing we did not yet know about the moot AFJ, Howard pretended that Rawlings should have been present and that he didn't understand his absence. By now, this entire situation was weird play acting by Howard. He stated that even though Rawlings was not present, he was not going to dismiss the case. (which did not, exist and he knew Rawlings would not attend).  Since Roan had requested a jury trial before filing BankR, Howard stated in bogus hearing, he noticed Roan had requested a jury trial. Roan agreed.

34.     It was obvious that Howard was pretending to hold a hearing, and pretending to be unaware of the status of the case, i. e. the BankR, AFJ etc, thus was holding a senseless, moot hearing, under the mistaken assumption that we, as pro se litigants would not realize the status, and recognize his pretending, and could not distinguish the relationship, the similarities, duplications of the BankR decision and the replevin.

35.     I could do nothing but sit in silence while he pretended to be acting within his judicial authority, which he wasn't.  Being pro se, Roan and I had no standing whatsoever with Howard, thus we were at his mercy. I had no choice but to just sit while Howard pretended to administer justice, finagling the answers he needed from cornered Roan to justify denying the AFJ, which agreed to pay me for damages, which Howard's vendetta against me could not allow.

36.    Howard then, unbelievably, commenced to "made a big deal" about how he was required by rules to examine Roan to see if he was qualified to represent himself as a defendant in a civil trial. In disbelief, while I watched in horror, Howard actually proceeded to read Roan Circuit Court Criminal Rule (8.05) for pro se criminal defendants, that:  the pro se criminal defendant has a right to represent himself without attorney, but only if the court approves; that the rules would not be relaxed etc.

36-a.   Roan was dumfounded, he later stated, that it was like being in the twilight zone. I thought Howard was fanaticizing, and/or had become senile. The entire scene was surreal, like a strange, illogical dream. It would have been comical, if not so tragic. Seeing how serious, exact, and intent Howard was to get this absurd act just right, considering who Howard was, and the circumstances in which this completely unrealistic scene took place, was disturbing.

37.    Howard examined Roan the whole nine yards, so to speak, all except the court appointed counsel part. Then announced that he found Roan had the knowledge and ability, etc, therefore the court was going to allow Roan to represent himself pro se in his (Phantom) civil trial on a moot replevin. Roan had not challenged the BankR decision, showing that he accepted the court's decision, including Rawlings refusal to reaffirm the debt, thus ending all Roan's interest in the Home.

37-a.   Roan knew as all in case did, and especially Rawlings and Howard, or should have known: That if you put every citizen in Clay County in a jury, to decided the replevin action, including Howard, and all ruled to give Roan the Home , it would be legally meaningless because: The BankR decision had abandoned Home, and G.T. had refused to reaffirm. Roan had no more legal claim to make to a jury, or Howard. The BankR had decision had stripped Roan of his authority to maintain possession of the home, the same intent of the replevin.

37-b.   On the same token, if the same jury, including Howard, ruled to give G.T. right to possess the Home, from Roan's possession, it would have been just as meaningless because: The decision would be a decision to maintain the status quo, because: The BankR action already gave G.T. the right to possession of the Home against Roan, the same intent of the replevin.

37-c.   The only legal act for G.T. to take was to forget the replevin, jury, Howard, and the Court as a futile exercise because :  The only option G.T. had was to agree with me/us, pursuant to UCC 75-9-604 (d) as we had already agreed to do in AFJ, but Howard, illegally denied. The AFJ could have been edited to remove Roan, and Replevin, and case settled, without need of Howard, Court, hearings, or jury. In fact, Howard had no jurisdiction any longer, since the BankR action had accomplished what the Replevin was filed for, which was: To allow G.T. right of possession of the Home, against  Roan's possession. But could not, give G.T any rights against us.

10

37-d.   What the BankR nor replevin nor Howard, nor jury could legally do, was remove the home from our possession attached to our private property. Only UCC 75-9-604 (d) could do that, with our consent/permission. Not Howard's, G. T.'s , Rawlings', not the Sheriff, nor a jury agreement, Just our decision pursuant to UCC 75-9-604 (d).  Howard's actions since BankR were absent all jurisdiction, and Rawlings' actions were all illegally as was the Sheriff, deputies, and all state actors:

38.   I knew the above illegal criminal defendant examination of Roan was a pay back to me, because:  about 13 Years before, in a civil case <u>which I was a Plaintiff</u>, Howard, unbelievable therein also, not hiding his distain at my pro se presence in "his court" let me know same in the most ridiculing manner possible, making fun of me at every turn, in a condescending, insulting, grandstanding manner. Then, in a big show and fanfare : he explained  that he had to examine me to see if I should even be allowed to represent myself pro se .This brought laughs again from the admiring court audience, same Howard had been playing to, and soliciting laughs from at my pro se inaptness pitted against his judicial superiority.

39.   Howard was obligated to be courteous to me at least. Not grandstand and make a laughing stock of me, which is what he did. He commenced to examine me, and read me criminal rule 8.05, word for word from his notes, etc, all in a ridiculing manner.  At the end, Howard angrily, in an extremely loud boisterous voice, said: I <u>Strongly advise you get (sic) yoself, an attorney"</u>, dragging the strongly out to some length for emphasis, bringing looks of pity from the audience and looks of approval of Howard's judicial abilities to expose my pro se ineptness.

40.    When I objected on the attorney matter, as hearing continued, Howard, without a word, but in intense grandstanding manner, jumped up, gathered his papers in one fell swoop of his hands, and came down from the bench in a huff, and quickly strode out of the courtroom, and my case was over, for Ten (10) years, even though I filed motions to get same back in court. It took an unbelievably, <u>ten (10) years</u> for my case to be heard and settled again in his court, only because opponent petitioned  for same for which I was awarded damages, but not for 10 years.

41.   Court records will prove this unbelievable case. Therefore I knew, Howard's charade of investigating Roan was meant for me, sitting in the hearing room, because I had mentioned the incident several times throughout the years, in that case, and other pro se cases, even to the Supreme Court of Mississippi.   Howard was paying me back for questioning him years ago.

42.   However, after the pretense of a criminal pro se examination of Roan, Howard asked Roan when he wanted to set a jury trial date. Roan glanced back at me setting 20 feet behind him, and I just raised my brow and shrugged my shoulders. Roan knew a trial date was senseless. Nothing Howard had done so far made any sense and was absolutely strange, we agreed

afterwards. Roan, exasperated, refused, realizing it was a sham, play acting by Howard. Thus a deputy court administrator in a letter, to be shown, asked Rawlings to set jury trial date.

43.     After the bogus hearing, a letter, not a formal, judicial decision on the hearing for a legal record, but an unofficial letter not signed by Howard, but written and signed by Carrie Kimbrough, Deputy Court Administrator, to Rawlings that: Howard refused to sign the (sic) proposed Final Judgment because Roan wanted a (sic) jury trial, and that we were not parties, and that Stevens, after almost forty (40) years practicing law in same court, a good friend of Howard's, a main court appointed attorney for indigent criminal defendants, had not (sic) entered an official entry of appearance in the record, thus in case illegally. There was no case.

44.     Therefore, if the hearing was legal, then a legal court generated decision signed by Howard was required, for the record. Stevens was just helping us, not Roan make a deal with Rawlings for the Home, same I was not even obligated to make. The Home, because of, and since the BankR decision, was in our possession on our property. The BankR decision, instigated by Rawlings, gave G.T. the right to possession of the Home against Roan, and the right to proceed against us, if they could show a legal right, but not the right to proceed against Roan, to gain possession against us. Even if BankR, left Home in Roan's possession, UCC 75-9-604 mandated G.T. deal with us as shown for the home.

45.     No direct legal action against us was every filed. All the legal action in the world against Roan, could not give G.T. possession of the Home against our legal possession. Therefore, we were not obligated to help G.T., minus a court decision, obtained by Fourteenth Amendment procedural due process court action, remove the Home from our property. We had offered G.T. the right to remove Home, with legal conditions, but Howard refused.

45-a.     There was nothing else we could do except sit and watch all the illegal litigation Rawlings and Howard manifested on the moot replevin, swirl around us, and it was massive, surreal, all the way to a Robbery, by threat of force against us, when 75-9-604 (d) was all that was needed, which we had agreed too.

46.     The AFJ, signed by Stevens allegedly for us, but hidden from us by Howard, drawn up and signed by Rawlings allegedly for G. T., was not just an offer of judgment, or a proposed judgment as Kimbrough incorrectly characterized same for Howard, but an Agreed Final Judgment, ending vexatious litigation, if AFJ not moot. If AFJ valid, then Howard would have gone against all know rules of law in refusing to approve AFJ which ended all vexatious litigation. If same moot, then why did Howard have Kimbrough address his refusal of a moot AFJ to Rawlings, not because he considered same moot, but because he disagreed with same after holding a hearing on same?

12

46-a.   If AFJ is claimed valid, then Howard could not by any know rule or principle of law deny AFJ, thus further litigation to obtain FJR is definitely moot, because AFJ ended all further litigation. If FJR is claimed valid, then the April 7, 2010 hearing to decide AFJ was valid, and case should have been dismissed, because Rawlings did not attend AFJ hearing, and Roan did. In, same token, Roan did not attend the July 22 hearing, but Rawlings did, and for that reason alone, so the judgment states: "...the Court having found that Defendant Roan Whitefoot failed to appear, and Green Tree is entitled to entry of Judgment ...".

46-b.   Rawlings set both April, and July court actions. He had a duty to attend on April 7, 2010, if hearing valid, or have his case dismissed, and according to Kimbrough's letter for Howard, Howard considered hearing valid, thus should have dismissed replevin action. Howard's denial of AFJ or not should of been irrelevant because:  there should have been a Final Judgment which read: "...the Court having found that Plaintiff Green Tree failed to appear, and Roan Whitefoot is entitled to have this replevin action dismissed ...".

46-c.   In fact, since Howard considered hearing valid, then the AFJ together with the fact Rawlings not present and Roan was, was  overwhelming reason to dismiss case. Instead, against all known rules and principles of civil law, Howard denies AFJ, and allows absent Rawlings to at his leisure and convenience, set another hearing. This was/is against all judicial ethics.

46-d.   However, neither court action was valid, because both were against Roan, and he was already, for G.T.'s purpose, to remove home off our property, eliminated by BankR Action, which gave it right to proceed to obtain Home but action against Roan could not achieve that.

47.   A "true", transcript, which may be hard to obtain, (I speak from experience) should exist, of this moot hearing, but which would not surface for appeal for Supreme Court, absolutely will support all we have stated herein about same, and show same a charade, if it can be found. And if found, not altered, because: years ago, in litigation with a bank, which we lost, in Clay County Chancery Court, we appealed and ordered the transcript of the final trial.

48.   We found to our astonishment, that we had a fair trial after all. In fact, a perfect text book trial. That there was about ten (10) pages of transcript describing in detail the perfect trial we had. The judge was perfect in all he said and did, and we even had gained in our legal abilities. We were making motions, asking proper questions, as seasoned attorneys. We realized that we had received the most perfect, text book trial on the merits possible. That we just had a rotten case is why we lost. I can name other instances. In addition, the bank attorneys in this said case based their argument upon the precedent of an 1840's case about a security agreement on eighteen (18) (sic) Negro Slaves. That wasn't in the transcript or record.

49.   Notwithstanding above, Kimbrough should be questioned, the clerk questioned and court reporter questioned, all under oath. I am not being disrespectful in my characterization

of Howard's actions in same, but simply stating what went on in the bogus hearing in which Howard kept secret from us the fact that he had a signed AFJ albeit bogus, from Rawlings and Stevens, purportedly ending the case, before Howard told them, out of our presence, that he would not accept same, but he had a better way, which would not entail G.T. pay me a dime.

50.     Also, I have the transcript on the phantom case I described above, same not in Howard court, but I do have another transcript, from Howard's court just as bad, and if one surfaces of this moot hearing, it will be altered also. However, any transcript, no matter how altered, would show that the bogus hearing took place, on a moot replevin. Transcripts are made up in Clay County Courts, to make the trial look legal, at least in my cases. An investigation will prove this corrupt practice. The clerks and court reporters know same and should be questioned.

51.     Stevens last word to me on the Home was that we may as well let G. T. have the Home, and hope they did not do to much excess damage, because Howard would not ever agree to any payments to us on same, regardless of the law, to me because: Howard did not like me interfering in legal matters in "His Court" through the years.  That he would never allow G. T. to pay me a dime for any reason, because of you, meaning me.  There is much more he told me, but my hands are tied by his regretful sad demise. I still miss knowing he's around, although I would include him in this complaint if he were alive and healthy, but not for personal reasons; the same as for all included herein, most of which I know and respect, but for sake of justice.

52.     When I stated that what Howard did was corrupt manipulation, Stevens laughed sarcastically and said:   everything we do in this court is corrupt, almost 100% of the time,( he had told me 90 % on another occasion) that's just the way things are done around here, so I needed to wise up and stop expecting to get fair treatment in (sic) "Judge Howard's Court", as he put it, pro se, which Howard loathed, as criminal examinations  of me and Roan, and 10 year delay prove. Discovery and record will show much more if given a chance.

53.     After April 7, 2010 moot hearing debacle, Rawlings, in concert with Howard set an alleged jury hearing date Roan refused to set, for July 22, 2010, to try the moot replevin against Roan. On hearing date, Roan had no reason to attend, having no legal cause of action to defend. Thus, Howard, in a planned Bench trial, issued a moot, corrupt Final Judgment In Replevin (FJR) against Roan, who "had no dog in the fight" so to speak, thus had nothing to gain nor lose by attending the bogus trial, nor by shunning same.

53-a.  The hearing and FJR against Roan were absolutely shameful, and of no consequence to help G.T. legally remove the Home off our property, without our consent or permission, which we had sincerely, unsuccessfully tried to give. Thus the Burglary/Robbery, an absolutely shameful act by our sheriff was committed against us, all completely senseless/unnecessary.

14

54.     In light of above, the corrupt "Court" generated illegal FJR, instead of the bogus AFJ was entered, with exact same false wording as bogus AFJ except for omitting the part for: <u>G. T. to pay us for damages to our property per statute as shown,</u> just as Stevens said and the July judgment is in the name of Roan Whitefoot "Only", and even John Doe(s) removed. But same was just as moot as the same moot AFJ wording already shown. However, the fact that the only difference was "not to pay us/me", and our "names removed", tells the entire story and proves Howard's vendetta against me is behind all the outrageous illegalities that are to follow.

55.     Above proves Howard absolutely did not want to approve any agreement to pay me damages due to personal vendetta against me, revealed above, and following. Therefore, he instigated, promoted, and continued illegal litigation all the way to a bogus bench decision (no Jury) in <u>July 2010</u> which refused us payment for damages, two (2) months after he pretended to refuse same identical worded judgment, the bogus AFJ in which damages were included for Roan's parents, same Kimbrough had claimed Howard did: all for the sake of Roan.

56.     The moot FJR was a redundant worded illegal judgment. Said July court generated final judgment was an exercise in futility, a complete fraudulent endeavor, absent all jurisdiction of the court, and Howard and Rawlings knew it. Its poisonous fruit was a self-help illegal repossession endeavor, by dictionary definition a theft: by Burglary, and/or by Robbery.

56-a.     A theft is:  "<u>Intentional, fraudulent, Felonious taking of another person's property without right or permission</u>" same is a felony in this case because of the worth of the Home. If the theft is: <u>Taking by force, or threat of force, in victims presence, it is a Robbery.</u>  If the theft is: <u>Taking of the property by entering unlawfully, it is a Burglary.</u>  On March 22, 2011 a theft of the Home was instigated by Rawlings, sanctioned by Howard, launched and overseen by the sheriff.

57.     The theft in this instance started off as a Burglary, an attempt to taking the Home by entering our property unlawfully, as will be shown in the following. After the Burglars were discovered, two (2) of which were sheriff's deputies, the theft became a Robbery, as described, because the Home was now taken off our property illegally by threat of force, by the deputies, as the sheriff, in our presence. This will all be covered in paragraphs below.

58.      Roan did not attend senseless, bogus July 22, 2010 trial he was supposed to have sacrificed his parent's right to damages in order to receive. Or any other moot hearings held absent all jurisdiction. All were illegal actions held by Howard and Rawlings,  (several more), all which Howard alleged in Kimbrough Letter Roan wanted, and Howard for justice sake: was "hell bent", so to speak, to make sure Roan received the jury trial he demanded and deserved, to continue to litigate against his parent's rights/wishes and the BankR Court's Ruling because:

59.     Howard pretended, Roan wanted it, and Roan had been thoroughly examined as a criminal defendant, in a civil action, and judged competent to act on his behalf in the civil jury trial against his parents interest, and Roan deserved his day in court.  No surprise, there was no jury trial, same cancelled by Howard and Rawlings agreed conspiracy for Rawlings to bring, on day of alleged jury trial, set by Rawlings, a motion for Howard to cancel jury trial, which he planned to do, and the record will show he did.

59-a.   A check of record may show that no jury was scheduled to convene at said trial that day anyhow, or if there was even a valid bench trial at all. However, whatever was held was moot and of no consequence for any legal purpose.

60.     The absent all authority, Kimbrough/Howard unofficial, none judicial letter overlooked one small issue: That Roan had been stripped of all ownership rights to Home when Rawlings refused to reaffirm his S/A with G. T., but all financial obligations of the S/A for the Home were kept in his bankruptcy estate to be fully discharged.  The stay was lifted so G. T. could claim the Home from us, if it so choose to do, which it didn't.

60-a.   With Roan no longer obligated to G. T. for payment for Home, he no longer had legal ownership interest in same. Since Home was on our property, Roan had no control, nor had possession of the Home, and neither did G.T., under terms of any known law. Taking the Home without legal right/permission was a blatant crime.

61.     Thus all actions Howard took on the replevin after BankR and issue about Home settled, was taken absent all jurisdiction. Said illegal acts and jurisdiction violations, penetrates the absolute immunity shield which protects Howard for all acts, even illegal ones, if done while acting within his jurisdiction, in his judicial capacity. Here, he was acting absent all jurisdiction which culminated in March 11, 2011 theft by Burglary/Robbery by threat of force, making Howard libel to us for all damages caused on said date by said defendants by Howard's order.

62.     The culmination of Howard's and Rawlings' illegal shenanigans, was the direct proximate cause of the theft of Home by Burglary, and Robbery, after the rape and pillage of our property, to be shown following, which brought all other Defendants together in secret, 0n March 22, 2011 all with shared goal, all acting in covert action, all in concert, all state actors, acting under color of law, under pretense of being legal, to: without right or permission, take the property of another, a "Theft" by Burglar, by unlawful  entry, then Robbery by threat of force, to be shown in following.

63.     As to Howard's and Rawlings' illegal acts which culminated in above, described in detail in following, time to file complaint tolls from the date of any physical and mental damages as a result of their past illegal acts.  Until there was damages, or damages known, there was no

cause of action. Howard and Rawlings' illegal acts had not yet resulted in damages, until March 22, 2011, same which occurred well within the statue of limitations, for this complaint, for the outrageous damages explained in detail in the following paragraphs.

64.    On March 22, 2011, I came outside and heard a faint sound on the front of our 32 acre homestead property close to the county road, almost 200 yards away and slightly over a hill and to the right side where sat a large 30 ft. long x 12 ft. wide and about 8 ft tall brush pile which extended to a 9 ft tall 10 x 20 ft. metal/aluminum building, plus large tall pine trees, several large 8 -10 foot around hardwood trees and other smaller bushes which obstructed our view to front of property in that direction.

65.    This was the area upon which was affixed the manufactured Home which once belonged to my son Roan, but because of BankR  abandonment of same, now belonged to us by possession, same legally on our property until removed by due process of law, as we had agreed to allow for over a year, but Rawlings never accepted our offer. We understood there could be no legal act to remove the Home because the FJR was moot, also because the moot FJR was on appeal, by Roan, and I joined, hoping the Supreme Court would force such due process, and show the FJR was moot.   What we feared was a clandestine self-help theft by burglary by Rawlings, but not a Robbery by sheriff and Howard, by threat of their deputies.

66.    We did not expect the sheriff and Howard to enable anyone to commit a burglary, by breaking down our fence and locked gate, unannounced, in complete secrecy, and in order to maintain that secrecy, to cut the Home out the way they did, ignoring the regular driveway, because same would have exposed them to our view, same to take property of another without right or permission, same a burglary which turned into a robbery by threat of force by deputies.

67.    I proceeded up the hill past the large brush pile, trees, and metal Building, etc.etc,  and on other side, discovered two (2) Clay County Deputies and four (4) none law official adults, three (3) males and one (1) female illegally on our property as stated, hidden from view. I communicated with the surprised deputies and state actor Simmons.

67-a.    One was Deputy Pettit, and the other Deputy I did not know. Wanting to also include him in this action, I went to clerk's office in May of 2014 ( two months ago), to review the "Execution of Order Return" mandated to be in file of case, on illegal actions on our property on March, 22 *ib.* to discover this deputy's identity. Said return was missing from file. Head Clerk (who coincidently was chief deputy under Sheriff in first incident herein *ib.* before he became circuit clerk in Howard's court, before Scott became chief deputy as shown herein) *ib.* would not comment or discuss missing return with me when I stated that without said return, there was no way for me to prove Sheriff was even on my property for any reason on March 22 *ib.*, that the law mandated a return of the execution of a court order to show said order executed.

17

67-b.   That: without same, no one, for future litigation, or for any reason, could ever review file and know that Deputies' had executed anything on our property on March22, 2011 *ib.,* that: it was as if the illegal execution I complain about herein never happened, because: same cannot be proved by the court file since file is silent on said execution. At this, the Clerk just looked at me and still would not comment, and did not show any surprise or concern that return was missing. He just calmly, without any comment whatsoever said I would have to talk to sheriff's department about mandated missing execution of order return from his "Clerk's File".

67-c.   I did check with Sheriff's Office immediately, and Scott insisted several times that return was filed Three (3) years ago, stating, and repeating more than once, that :"it was the law, they had to file it, which was his reason he knew it was filed, that: they would be in violation of the law if same not filed, "Scotts' words, not mine ", and I agreed with his assessment. Scott stated, That: I should just ask the clerk to let me see the file, because it was in the file. I said: I already did that and the clerk sent me here. He then replied: I guess it's just lost then and " there's nothing anyone can do if it's lost". So I asked him for a copy of said return *ib.* and he said: there was no copy. When I expressed surprise, Scott insisted that the Sheriff's department did not make and keep copies for their records of such returns which they filed in court with clerk. He went into great detail why this was so, to vindicate Sheriff Department for its policy, it seemed.

67-d.   When I still expressed my disbelief that they made and kept no copy, and asked to speak to whomever would have handled such filing of returns and record keeping three (3) years before, Scott stated that she was not in at the time, (our conversation was outside the Sheriff's Department, on sidewalk), but that: he would have her check on it for me. I never heard from her or Scott. However, as a matter of fact, every time I filed a document with this clerk's office, I always, without fail, received a stamped copy right back in the mail, but Scott said they had no copy. Scott also insisted, more than once, when I enquired, that he had no idea who the "other deputy" was on my property on March 22, 2011 with Pettit *ib.,* so I returned immediately to Clerk's office  but Clerk was gone. Deputy clerk did not know where or when he would be back.

67-e.   Therefore, I broached the problem with the deputy clerk.  She insisted that the return was definitely in file, she was sure, that: I had simply overlooked it by looking in the wrong section of the file, that: she would show me the section it was in. I got the impression that she was the one who had filed same because she claimed she knew right where it was in file etc. Thus the deputy clerk and I did an exhaustive search of file together, in all sections of file, and she appeared in absolute dismay and disbelief that what she was so sure /positive was in the file,( because she had filed same I submit), was not there, or no longer there, I contend.

67-f.   Therefore, the identity of other deputy is still a mystery, even to the Sheriff and the court file, thus same not included in this action as he should be, so I call him the other deputy herein.  If it turns out that he is indispensible, I submit that he can be added by rules as a

defendant. As for missing return, it would have to be bogus, and that's why it is missing. That makes a fraudulent return in both incidents in our complaint *ib.* One filed, one not filed because it would be a fraud also, and incriminating, or said fraud removed from file, I submit.

68.     Notwithstanding, since I knew Pettit, when I reached the scene, we discussed  Scott as being the one who had dispatched them to our property in secret, for Rawlings, Sheriff and Howard, from Pettit's own mouth.  Scott, as/for sheriff himself oversaw their actions from a distance, just as if he and sheriff were both at the scene. Pettit agreed Scott, as/for sheriff and Howard, were aware of and condoned the plan to bring heavy equipment to cut our trees etc in secret unlawful entry burglary. That Scott as/for Sheriff and Howard knew ahead of time that trespassing and all illegalities, described herein, was what they were coming to our property to do to: "Get the Home At All Cost", without right or permission.

69.     Same was a clandestine theft by unlawful entry, a Burglary, in which Scott for Rawlings, Sheriff and Howard had dispatched deputies, against all state law and our procedural due process rights, to commit a Robbery in our presence by threat of force by deputies, protecting Simmons, SMHS and Terry inter alios state actors, rip, and cut the Home off our property, "At All Cost", a personal order from Howard, they assured us was the order they followed.  Never once mentioning, nor showing us any other authority to act.

70.      When in a few minutes Elena Joined me at scene, with a camera and video, We discovered that our boundary line fence post holding a locked cable across a ten (10) foot wide entrance had been pulled from the ground and cast aside, since they had no key, with locked cable still attached.  Several other fencepost had been removed and cast aside to widen the drive entrance to our property to widen its original width at county road. This was not the entrance upon which set the Home, but was an auxiliary driveway constructed only two months before, for average size vehicles to ingress/egress our property, not 16 ft. wide Home.

71.     There was already a 18-20 ft. wide heavenly graveled driveway from the Home to the county road available, same used to move home onto our property ten (10 ) years before and every since, for ingress/egress to Home.  Same was about 75 yards long from the Home, across the top of the hill, in the open, South, to the ingress/ingress entrance way, entire 75 yard drive viewable from our house below, which is important to someone not wanting to be seen.

72.     Simmons and Terry, with two (2) other SMHS employees protected by the deputies had completed the rape and pillage of our property described. In addition, they had removed all concrete blocks from under Home, disconnected all electric and water etc lines, septic lines, and had attached an axle and tires, and a pulling tongue to the Home, all before we even knew they were there.

72-a.   Thus they had been illegally on our real property for about two (2) hours in a malicious trespassing, Burglary to extract Home legally in our possession, without right or permission, and after discovery, became a Robbery in our presence by threat of force by sheriff's deputies. If we had not discovered/interrupted the Burglars, they would not have become guilty of Robbery. Now they are guilty of both.

73.    They had almost completed the secret burglary without our notice. All that was left to do was hook up to Home and pull same off and away, about thirty (30) minutes, more or less. The signs on the truck doors read "Simmons Mobile Home Service", with Cecil Simmons in large letters and Terry Simmons, his son, in smaller letters, and with a phone number etc.

74.    The damage caused by Defendants rape and pillage of our property was: Seven (7) large pine trees, out of many dozens we were growing for market and/or to conceal our property from road, mangled, piled and destroyed. Six (6) smaller pine trees; a 15 year old pecan tree about 30 feet from the home was cut, trampled by heavy equipment,  Seven (7) other ornamental trees we had planted years before about 20 ft. from the Home were destroyed. Meany commercial blue berry bushes we had planted 3 years before to grow to harvest and sale, about 20 feet from the home were destroyed.

75.    All sod and grass etc was scrapped to the bare ground in the area, about 20 yards long and 35 yards deep; many large and small flower beds, and other outdoor structures we had constructed through the years for birds and animals, which did not need to be destroyed to remove Home, in addition to much other damage, to take Home without right or permission. The esthetic beauty of our property, which we had shaped with trees, shrubs, flowers and other structures was/were destroyed for rest of our life time, same which we had shaped for more than thirty (30) years, since 1981, by selected planting of trees shrubs, flowers etc as described.

76.    The area destroyed was a barren gully when we move onto property in 1981. We spent thousands of dollars to have bull dozers push dirt from other high spots on our property into the gully, and then throughout last thirty (30) years, have as described above, turned the gully into a beautiful woodland scene, on front of our property. The Burglars/ Robbers destroyed all that beauty, which we had for over thirty (30) years worked to create, as described.

77.    Placed in record are eleven(11) Photos, 1-11, (have more), taken on March 22, 2011, which show the entire face of the land changed and disfigured by the defendant's rape and pillage in the area from the Home to the new road, about 30-40 yards away. All damage done by chainsaw, ax etc, and heavy equipment mentioned above, to illegally, unnecessarily construct a new, large unnecessary dirt road, same not needed nor wanted by us, as same is now a permanent 30-40 ft. plus wide gaping hole exposing our property in the area to the road, where large pine tree etc removed.

20

78.    We were stunned, shocked, and dismayed at the irreversible damage to our property, in our lifetime, still an eyesore to this day three (3) years later; with much mental and emotional distress to us, because of time, effort, expense, ourselves, we had exerted for over 30 years, all in vain, with the site which was hidden from the road, now exposed. Also, the fact that said outrage was a self-help Burglary; a Robbery by threat of force by our local sheriff, by and through his deputies, for our local judge, and a foreign attorney was even more heartbreaking.

79.    To see our own deputies on the scene, protecting strangers as state actors, piece meal destroying our property without a smidgen of legal right to do so, was very emotionally disturbing. The state actors were protected by our law official neighbors, under the guise of some misunderstood legal duty, which was completely against all our constitution stood for, but they, from their own mouths were operating pursuant to: Judge Howard's : "Get The Home At All Cost" order, not moot FJR. The Burglary/Robbery by threat of force was Howard's crime.

80.    We had noticed weeks before that someone had been trespassing upon our property checking under the Home at area to axle and tires, and tongue for pulling, since flaps were up in these areas of Home.  Also, we later found, same were checking the ground to determine when the ground would be dry enough to commit the crime.

80-a.    There were also constant foot prints and tire tracts in soft side of gravel road at the Home property. Now Simmons, by his actions, showed that he knew about the brush pile on main driveway and knew about the large brush pile, pine trees, and metal building, large hardwoods etc, which they could hide behind to cut the Home off property in secrecy thus he brought heavy equipment.

81.    Why else would Simmons have brought the heavy equipment etc unless he had trespassed weeks earlier to scout our property? How else would he have known the ground was dry enough for the trucks and heavy equipment, since same was to operate in secrecy, off graveled, drive. There was absolutely no other reason to go to the extra trouble and expense to bring the equipment, from about 100 miles away, except to cut out exactly as they did.

82.    To move the home down the cleared drive across the top of the hill, which was all that was necessary, and which would have required much less damage to as many pine trees etc, but which was highest point to the egress to the county road would have been to pull the Home with the large truck cab in full view to us below. Thus it is obvious that the heavy equipment was brought after illegal trespassing scouting "trips' (several) stated, to remove the Home in secret. In addition, they believed they had permission to do as they pleased to remove Home because: they had a written order from Howard to "get the Home "At all Cost" they claimed.

83.    One of the first questions I asked was why I was not notified of the attack on my property. Simmons mockingly smiled and said: "that was the plan", you were not supposed to

21

know. We have orders from the judge to: "Get The Home At All Cost". He, (Howard) said we can do whatever we want to do to remove the Home. Judge Howard's order said do whatever we had to do, that's what all cost means, he said, in almost exact words. We didn't have to tell you because the judge said we didn't have too. You have no say or rights in the (sic) trailer etc.

84.     We know/knew that the July 30, 2010 FJR was moot, but notwithstanding that, the Defendants at scene did not even act pursuant to the moot FJR because: they were committing all their atrocities in the name of another bogus order, the "At All Cost Order". They claimed, with all sincere conviction that: such a written order existed and was issued by Howard, and they read it, and it was their authority.

84-a.   Assuming Defendants speak truthfully and I do, Howard is the impetus behind this illegal action to take another's property without right or permission, same a Burglary, a Robbery in our presence by threat, with sheriff supplying the threat.

85.     Also, since Rawlings was acting outside his scope of representation of G. T., and Rawlings and other individual state actors were all, with aid and abetting of sheriff/deputies, acting outside of the scope of any legal authority, committing a crime by illegally protecting the individual state actors, steal a Home off our property, committing a Felonious Robbery by threat. Neither Rawlings, sheriff, nor Howard had any legal title or right to the Home.

86.     Rawlings was no longer representing G. T, because his illegal actions exceeded any authority G. T could grant him. G.T. certainly could not grant him authority to commit a Robbery for G.T.; his code of ethics forbade him also to commit crime for G.T., thus Rawlings was acting for himself, instigating and furnishing the personnel, for the unlawful entry Burglary, and Robbery in our presence, by threat of force. Rawlings did not own Home, had no client that owned Home, represented no one who had title to Home, thus no right to remove Home.

87.     In addition, after the Home was taken, Pettit and I conversed again for several minutes about the "At All Cost Order" from: The Judge ". I mentioned again, as I had done several times, that he and others had committed a serious crimes against us, a rape/pillage, a violation of our property, and we would file charges against him, since had no choice. He said he understood.

87-a.   I then mentioned my disbelief that Judge Howard would ever issue such an order, and that the sheriff would go along. That same sounded like a military order to U.S. Marines, which Pettit and I both had once been, in different eras, to "Hold this Hill etc, at all cost, but not a situation like this etc.

88.     At this statement, Pettit, departed from his up to now stoic hesitation to say much or show much emotion, except to quietly mention the said judge's order several times, or agree with Simmons on subject now became animate/excited, which surprised me, and exclaimed in

22

said excited tone, Yea!, I thought that was strange too!, to say At All Cost in an order was strange, I've never seen that before in an order from a Judge! He sure (sic) did it though!

89.    When I asked if he had a copy of the order, Pettit, still in the excited manner said yea, it's in my car and excitedly took me to his car, setting on county road, off my property, to retrieve the order. I personally, along with Elena, watched him search his car, front and back seats, looking for the order.

90.    But after the extensive search, Pettit exclaimed, <u>obviously disappointed</u>, that he thought he had a copy of the order, but didn't have it. When I asked if it was the same as the replevin order, thinking he might have confused same, Pettit unequivocally answered No! I can get that order for you too, do you need it, it's not the one I was looking for. I said no, I had a copy of that order already. Pettit <u>definitely said</u> it was not the all cost order, but that he could get both.

90-a.   Pettit then <u>promised/assured</u> me, ( Pettit was absolutely sure of what he told me next), that: "They" had the order at the sheriff office, and "They" would show it to me. That Eddie, (Scott), or whoever you ask will get it for you. When I asked if he would be there, would he get it for me, he said sure, if he was there, but he did not have to be there and might not, but  that <u>anyone</u> there would help show/get me a copy, <u>just ask anyone</u> there etc.

90-b.   Pettit for his own defense will/should admit this conversation, and that it was this all cost order that he believed gave him authority, (not the FJR), same as he admitted to me it was. Thereby, Pettit had no legal order, and in reality, no order whatsoever at the scene.  This was a pure and simple Burglary/Robbery in our presence by force, by Clay County law officials, planned by sheriff, Scott, at urging by Howard and Rawlings to act immediately "At All Cost".

91.    In addition, Pettit should have this conversation on his audio recorder which he should have had on his collar, etc at scene, to prove his statements about Howard's "All Cost Order", and for me to come to sheriff' dept etc.  Said recording will prove, that such an order exist/existed at time  and was the illegal, absent jurisdiction order the deputies and defendants they protected  were marching to enforce, the illegal order they blindly but illegally obeyed to destroy our property , and steal the home by Robbery of us, not the moot replevin order even.

92.    Therefore, even if Pettit and other deputy, same as sheriff, had been acting pursuant to the moot FJR, which they weren't, they would still have been acting without legal authority. Thus they would still have been supplying the threat of force, for the theft/robbery, based on moot FJR. Even if FJR was not moot per se, it was against Roan, not us, and still illegal to serve against us because of UCC 75-9-604 (d). Even if Pettit and other deputy did not see themselves as committing robbery, they were. Even if claiming ignorance, the rape/pillage of our real property was deliberately done.

93.    There is no such thing as a robbery done in ignorance, or by mistake, especially if you are a law official. Same would just be a lesser degree of Robbery. Any reasonable law official would/should known, that since they had no direct order with our name, directed to us, to do what they did, in hand, to instruct them as to what their ministerial duty was, that same might be a negligent, act; that same might not be legal for a deputy to do, because they might be taking and destroying property they might not have authority to take and destroy.

93-a.    How many times had they, or any law official they knew, in performing such a ministerial act as serving a replevin, lacking property owners name ever protected individuals as they destroyed said property, as described herein, without even having a written order in hand, "a negligent act per se", with specifics etc, to justify their actions to persons' whose property is being destroyed, and/or stolen, and a guide for officials themselves, to follow.  Deputies had no order at all in hand, and any illegal order they could have had, would not have our name on it.

94.  Thus we know that the moot FJR "was not" the illegal "At All Cost" Order Defendants were marching too. Pettit absolutely, unequivocally, exclaimed excitedly, and repeated same to me several times, and in fact was the very last thing he said to me minutes later when we parted company, that: if I would come to the sheriff's department the next day,  Eddie, or "They" or "Anyone", Pettit's words, would give me a copy of the Judge's order, to just ask "Anyone" there for the "At All Cost" order.

95.    I did not go to the sheriff's office, but checked to see if same was in court file,  hoping the clerk could shed some light on the illegal order, knowing the sheriff would not give me such and would not be happy with Pettit nor Simmons for disclosing same. The clerk told me, that he did not have a copy on file of such an order.  However, same can, as stated, possibly be obtained from Pettit's audio/video recorder he would have had at scene.

96.    I mentioned this "At All Cost Order" in a motion to the Supreme Court, several times, shortly after incident three (3) years ago, and the fact that Defendants did not have same in their possession, while same fresh on my mind. In fact, I elaborated on same to some extent and can produce that document as proof, and also proof of visit to clerk for information about said order, all in vain.  Neither Defendants on scene nor Court Clark had in hand the order from Howard, reported to me, responsible for the destruction of our property as described.

97.    Also, the deputies, Scott, and Simmons and other SMHS employees can be disposed on the matter, since Scott, according to Defendants, was the one who dispatched them on same. I believe Defendants on scene will tell the truth, since it was their battle cry, so to speak, and even their defense herein this complaint, to justify their actions. To show the higher authority they believed they were serving, even though they could not prove they had an order at all to enforce any judgment whatsoever, since they had negligently failed to bring same to scene.

98.     It was evident, that the defendants were aware of their illegal actions, were concerned about same, had doubts about same, so were clinging to the "At All Cost" order, straight from the all powerful judge himself, so to speak, to justify to us, but we believe more so to themselves, that what they had been caught doing was alright after all, but knowing it wasn't.

99.     Based upon detailed statement of facts above, Howard is proximately, directly responsible for the destruction of our property by named Defendants, and Robbery of Home off our property. That every action Howard took in this case after the BankR and the moot bogus AFJ, on April 5, 2010 was done absent all jurisdiction. Especially the bogus hearing itself, on April 7, 2010 held in the annex to the County Court House was illegal as shown, also the moot FJR in July, 2010. Every moot action Howard took after the BankR hearing led to the March 22, 2011, Burglary; Robbery in our presence, by threat of force e. g. the Clay County Sheriff Dept.

100.    Thus, Howard is the prime mover, the first cause, the instigator of the crimes against us. If Howard had not throw the first illegal stone by his illegal actions in the beginning as stated, which has been proved, starting the chain of events that culminated in the atrocities the other defendants committed against us, inspired by his admonition to "Get The Home At All Cost", we would not be filing this action.

101.    We are not trying to hold Howard liable for what he did in 2010 at hearing inter alia per se, because we know the time by statue to sue on same in itself per se has expired. Plus we did not have damages at time to instigate action against a judge. But, the results of those illegal 2010 actions, resulted in damages absent Howard's jurisdiction which we can point to on March 22, 2011, still within the statue of limitations that we sue upon.

102.    We are suing Howard for the damages his illegal 2010 actions caused in March 22, 2011, in addition to the at all cost order followed on march 22, 2011. The time is tolled after the damages occurred, caused by his previous illegal acts. Those 2010 illegal acts culminated in damages to us on March 22, 2011, within the three (3) year statue. We would have sued sooner but for good cause which can be proven. Therefore, to understand, March 22, 2011, the background back to 2010 is absolutely necessary to show, since same is the contexts in which March 22, 2011 occurred, and why same has been shown.

103.    But even though Howard was proximate cause of other defendant's illegal actions, same can't relieve the other Defendants herein of their liability to us for their objectively unreasonable enforcement of the absent all jurisdiction get the Home "At All Cost Order" they absolutely believed they were enforcing. However, even if they were enforcing the FJR in their illegal endeavor, which they weren't, same would still have been an illegal removal thus a theft.

104.    This includes Scott, who advised Pettit, other Deputy, Simmons, and Terry, on the "All Cost Order". It was Scott who in concert conspired with other Defendants to proceed to our property, to bring all necessary equipment, based on illegal scouting trespass of our property, aiding and abetting them in the commission of the self-help acts, just as if he were directing same on the scene, instead of from afar.  It was Scott who condoned the illegal acts after committed, which communications we have to same before and after the acts can prove.

105.    Scott is liable to us for damages plus punitive damages for his part in the violation of our constitutional rights as described hereinabove, same which includes to take the Home off our property without right or permission.  As long as the Home was on our property legally, and it was, anyone who removed same without allowing us procedural due process rights, such as state law 75-9-604 (d) and the Fourteenth Amendment guarantees us, then by definition of theft, has committed a theft against e. g. theft is to: (take the property of another), without right or permission, as shown, is a crime, a felonious theft, after land Rape and Pillage.

105-a.  What Defendants did was a negligent, act, since enforcing a judgment is a ministerial duty, in official capacity, in Mississippi.  Protecting individual state actors destroy our property to remove a home from our property, and we were not even named on the order, thus same without an order directing them to specifically do so to our property, was extremely negligent carrying out of a ministerial duty. In addition, the decision to do so amounts to an objectively unreasonable decision, in personal capacity, so in either capacity, Defendants are not protected by qualified immunity if law officials, and individual state actors cannot claim said immunity.

105-b.  Either way, same are not protected by qualified immunity e. g. a ministerial duty carried out in official capacity, but in a negligent manner does not qualify for said immunity. An objectively unreasonable act done in personal capacity, the result of the discretionary decision to negligently violate their ministerial duty, and destroy our property and illegally remove the Home, does not qualify deputy defendant for qualified immunity.

106.    In addition, since Defendant Rawlings no longer represented G. T., for reasons shown, then Rawlings is personally liable to us for damages for acting under color of law with Howard and Scott and deputies, for furnishing Simmons, SMHS and Terry, Scott and his deputies with entwined, mutual goal to remove the Home from out property "At All Cost", regardless of the cost to us both financially, and mentally and physically, by his crime, as a state actor.

107.    G. T. did not, could not condone what Rawlings has done, without incriminating itself, and will be the first to say he was not acting for them when they find out about his illegal acts. If  G. T. reviews Rawlings illegal acts for first time, and then proclaims that they condone Rawlings illegal acts, then G. T. must join with Rawlings in this complaint, since Rawlings would have committed all illegal acts as a legal representative of G. T., making G. T., along with

Rawlings, liable for all damages to us for the illegal acts, since Rawlings would have conspired with his client to commit illegal acts, and aided and abetted same etc, against his ethical code.

108. The state actor Defendants, for Howard, with Howard's "All Cost" order as their guide, proceeded to do all other damage described hereinabove , guided and encouraged, and assured that they could commit these secret illegal atrocities, same which they must have known, had a duty to know, did know were illegal, since same were so outrages, because: they were convinced that the highest legal authority they knew of, an all powerful Circuit Court Judge was personally backing every illegal act they were committing, under color of law, as they violated our procedural due process rights guaranteed us by the Fourteenth Amendment.

109. All Defendants at the March 22, 2011 scene, including Sheriff and Scott, supervising from afar, in concert with Defendant's on the scene, and Howard and Rawlings, whose past direct, proximate illegal actions brought all other Defendants together in concert, by conspiracy per se are liable to us for State Law violations, just as if they were on the scene committing violations as follows: **Count I.** Criminal trespass. **Count II**, Malicious criminal trespass. **Count III,** Burglary, theft by illegal entry. **Count IV**, Malicious destruction of our property. **Count V**, Illegal cutting of our pine timber. **Count VI,** illegal destruction of our locked entrance to our property. **Count VII**, Destruction of our sod, grass, and lay of our land. **Count VIII.** Destruction of our ornamental and fruit/nut trees, and bushes. **Count IX**, For emotional and mental anxiety and distress we have suffered.

110. **Count X,** Sheriff and Deputies illegally aiding/abetting a self- help operation against us. **Count XI** Theft by robbery of us by threat of force. **Count XII** Conspiracy against us, pursuant to Miss. Code 72, 97-1-1, (1) (a) (h) (2). **Count XIII**, Miss. Code 97-17-67 Malicious Mischief, to Destroy, injure, disfigure, cause, to be destroyed, our personal and real property.

111. All Defendants described hereinabove, are liable to us for committing the violations of all the State Laws described in said Counts above, under color of law, absent all jurisdiction, in individual and/or official capacity, in the most disturbing, malicious manner possible, with complete disregard for our state law property rights inter alia, and our Fourteenth Amendment Procedural Due Process rights, to commit such incomprehensible land rape and pillage.

112. No reasonable law official would have abandoned their common sense and continued to commit such atrocious acts without a single piece of paper from a court with our name on it, knowing that deputies only operate in such circumstances pursuant to what their written order from the court directs them to do. Of course, the secret, off record "At All Cost Order" as the Court Clerk verified, could have given them such assurances, which they obeyed to their detriment, and are guilty as charged herein above, i.e. land rape/pillage, Burglary/Robbery.

113.    Until someone had a due process order against us, the Home for all legal purposes was our Home per se, since we possessed same because of the BankR decision, caused by Rawlings, which eliminated Roan's right and interest, which by law passed to us, since same affixed to our real property, in our possession until:

114.    G. T., since Home abandoned by BankR decision, could obtain possession against our property rights by conforming to UCC 75-9-604 (d), as we offered, but its attorney in concert with Howard et al refused, for nefarious reasons as shown, or same file some other legal process against us if same existed, which I am not aware of, but not by Burglary and Robbery.

115.    Just as O.J. Simpson could not steal at gunpoint his "own" personal property from another's possession, no one could by Burglary or Robbery take the Home from our possession, even if they had title, but especially in this case where not a single defendant after Rawlings eliminated G.T. by his illegal actions, had any title interest whatsoever in the Home, or our trees and other property described, and had no authority to be on our property.

116.    That even if G.T. had not been taken out of contention by its then present attorney Rawlings, because of his nefarious acts, G.T. would also have been mandated by all known law, to forget Roan and the replevin after the BankR action, consider replevin moot. That to obtain replevin judgment against roan was moot, of no consequence, because G. T. had to deal directly with us by UCC 75-9-604, as shown, in order to legally remove the Home from our possession, same legally attached to our property.

117.    Even if G.T., the only entity who could claim any legal ownership interest in the Home, had done as Rawlings and others had done, it would have been guilty of Burglary and Robbery to obtain Home from us. Just an agreement on UCC 75-9-604 with us was all that was necessary for G.T.to remove the Home, but its attorney Rawlings and Howard, simple would not agree for G.T. to make that deal with me based on same.  Howard was absent all jurisdiction in his acts.

118.    As long as we were not holding the Home illegally, and no one had filed a due process claim against us, thus to remove same without procedural due process, violated our property interest, and was pure and simple theft, and in this case, by Burglary, and Robbery in our presence, by threat of force against us, by sheriff, by and through his deputies, one of which was Defendant Pettit.

119.    Even if state actors had a valid written authority to remove the Home against Roan, which they did not have, since neither the moot AFJ nor the moot FJR afforded them authority against him, there was not even an illegal order against our rights, to enter our property by trespassing, to destroy our locked entrance way, and then cut and destroy our trees etc, as described. Violators had not a "Legal" or "Illegal" order with our name on it, granting right,

"Legal" or "illegal", to come to our property in particular, by name, granting authority to do as described. No Order at all. All defendants are liable to us for all damages caused, plus punitive.

120.   The violators relied upon no written authority at all, except the illegal "At All Cost" Order they claimed was there written authority, but never served same upon on us, to verify their claim. Thus same not valid to do what they did, even if the order had been valid, they did not have same with them, to guide and explain their actions, when caught red handed illegally on our property as Burglars and Robbers.  Law officials must have a copy of the order which they are enforcing in a civil matter, to show valid authority to act.

121.   The Clay County Sheriff, Scott, and Deputy Pettit are individually and collectively liable to us for damages for all state law violations in all counts described hereinabove. There is/was no rational basis for their actions.

122.   The Clay County Sheriff, Scott, and Deputy Pettit, are individually and collectively liable to us for damages described hereinabove against them, acting under color of law, acting in an objectively unreasonable manner, which violated our Fourteenth Amendment procedural due process rights; and/or while acting in official capacity, performed a ministerial duty in the most negligent way possible., by, rape, pillage of our homestead, and Burglary/ Robbery of Home.

122-a. The Clay County Sheriff, Scott, and Deputy Pettit's actions are outrageous, such that punitive damages are due.

123.   Simmons and Terry and SMHS are liable to us for damages for all violations shown hereinabove against them as state actors in symbiotic relationship with deputies with shared goal as shown. There is/was no rational basis for their actions which violated our Fourteenth Amendment procedural due process rights under color of law, as shown hereinabove.

123-a.   Simmons, Terry, and SMHS are individually liable to us for damages for the infliction of mental and emotional distress.

123-b. Simmons, Terry, and SMHS action are outrageous, such that punitive damages are due.

124.   Defendant  Howard was acting outside all jurisdictional authority for all state law violations as described hereinabove, committed in concert with all other defendants, same as if he had been on the scene with a shovel in his hand. His actions, absent all jurisdiction, violated our procedural Due Process Rights guaranteed us by the Fourteenth Amendment to the Constitution of the United States.

124 –a.  Howard personally, in concert with Rawlings set in motion the chain of events that resulted in the damages that occurred against us on March 22, 2011, with violators vouching

that Howards' At All Cost order was the supreme authority they trusted in, relied upon, and marched to with confidence, by threat of force in our presence, robbed us of the Home.

125.    Howard is liable to us for damages due to infliction of emotional and mental distress.

126.    Howard is liable to us for damages for all violations described hereinabove against him.

127.    Howard's actions are outrages, such that punitive damages are due.

128.    Defendant Rawlings was acting in concert with Howard, with sheriff and Scott and all other Defendants who committed the assault upon our property on March 22, 2011, just as if he were present. He was acting personally, not as counsel for G. T. when he illegally participated in the planning, condoned the result, supplied the illegal orders in concert with Howard, which enticed and enabled Sheriff, Scott, Deputies to protect a self –help theft/burglary/robbery by threat of force by sheriff, operation against us. Rawlings is liable to us for damages for all Counts outlined hereinabove, i. e. Burglary, Robbery of home, by/after rape and pillage of our private real property, as eleven(11) photos will show.

129.    Rawlings knew the AFJ and the FJR were moot, both on moot replevin, same senseless to maintain against Roan, for purpose of removing Home against our rights. Rawlings drew up both Judgments. He also filed the action that caused the BankR Court to abandon the Home by law of possession, to our property, since same was on our property, and Roan no longer liable for S/A, and had no more rights in the Home by reaffirmation denial. He knew the pre-BankR replevin he had filed was moot after the BankR decision he instigated and prevailed in for G. T.

130.    Thus Rawlings was acting under color of law, in concert with Howard as shown, and then with Sheriff, Scott and all defendants on the scene on March 22, 2011, for mutual goal of all conspirators, to illegally remove Home from our property in secret, at all cost, by a "theft" by Burglary and Robbery, as described, in concert with other defendants, minus G.T. approval. Unless G. T. does him a favor and accepts his illegalities committed as their representative.

131.    However, if by this action, G. T. learns of Rawlings' unlawful acts, and condones them, by some statement or action, or lack of action i. e., by not communicating with us to settle with us on Home based on the fact that it, albeit without knowledge, if such it claims, received the stolen Home off our property by Burglary and by Robbery, as shown hereinabove.

132.    If Rawlings' actions become ratified by G. T, as stated, then the time will began to toll for legal action against G. T. for damages by same just recently discovered or realized. Or same may, should be joined to this action as a defendant for same illegal acts as Rawlings is charged.

133.    Rawlings is liable to us for mental and emotional distress caused by his actions.

30

134.     Rawlings is liable to us for damages for the violation of our Fourteenth Amendment procedural due process rights as described hereinabove, as a state actor.

135.     Rawlings is liable to us for violations of all counts on all state law violations listed hereinabove.

136.     Rawlings actions are so outrages, such that punitive damages are due.

## FACTS OF SECOND INCIDENT OF COMPLAINT

1.     This incident also concerns violations of Clay County Sheriff illegally trespassing   upon our private property to commit illegal acts against us, in particular Elena. The sheriff, as his deputy, illegally entered upon our private property and served an illegal process form per se. In addition to the illegal service per se. Deputy, Frank Williamson (Williamson), then committed perjuries on an improper return itself, against civil process rules, of M.R.C.P., inter alia statutes.

2.     By so doing, Williamson, as sheriff, violated our, and especially Elena's constitutional rights to procedural due process guaranteed under the Fourteenth Amendment, inter alia state laws, under the color of law. Williamson, as sheriff, who is alone responsible for all civil process summons, in Mississippi, illegally trespassed upon our posted, fenced in property, with an improper summons form and lawsuit complaint for Elena, but left same with me.

3.     Williamson then filed a return untruthfully claiming on return that he had completed process on Elena pursuant to the rules, inter alia state laws, making Sheriff Scott officially liable to us for damages and/or personally liable to us for damages, according to the interpretation of Williamson's violations by the court. Defendant's absolutely are liable for damages under one of the scenarios officially or personally, as will be shown following.

4.     On October 11, 2013, Defendant, Clay County Sheriff's Deputy, Frank Williamson (Williamson),  acting as Eddie Scott (Scott) Sheriff of Clay County, knocked on our back door, not front door, as law requires, with a civil process summons (lawsuit) for Elena, which I agreed to accept.

5.     As shown in first incident, we live on a 32 acre block of land in rural Clay County Mississippi. Our house is about 200 yards from the County Road and our ingress/egress entrance in this incident, was blocked by a locked chain stretched across the entrance, on October 11, 2013. Trespass signs are/were at all times relevant, posted in the long driveway to our house, same which Williamson, after parking his car at our locked entrance, and climbed over locked chain, passed on his way to our house.

6.      M.R.C.P. rule 4 (d ) (1) (B) mandates that if a summons  cannot be served after the deputy has exhausted all reasonable diligence to serve same on the defendant anywhere in the

county, same can be  served by leaving the summons and complaint with a spouse of the person to be served, who is willing to accept same, at the place of abode of the person to be served, but That: in that scenario, service is only complete 10 days after serving deputy mails a copy of the summons and complaint to person to be served, to the address where the deputy left the summons and complaint with the spouse of person to be served.

7.      Although we are well known by the sheriff department to have lived at our present physical location in clay county since 1981, Williamson, obviously without having exercised the reasonable diligence required by said rule, but on his first attempt at service, resorted to that alternative service of rule 4 (d) (1) (B) which mandates reasonable diligence, before resorting to alternative service.  Williamson never asked or requested/demanded to serve the summons on proper party. I was unhappy with his trespassing at the time, and in a friendly manner, because he was a deputy sheriff, by his uniform, let him know same. He failed to respond, and I did not press the issue, out of respect for the sheriff who I liked and respected.

8.      I knew about the requirements of rule 4 (d ) (1) (B) when I accepted the summons, and he was duty bound to know about same.  After about a week passed, with no completion of service by a mailing, as the rule requires, I called the clerk of court to see if return had been filed, and it had, and the clerk mailed us a copy. We read the return in dismay, but not surprise, because we knew the history of the illegal manner in which Clay County deputies served process, having had previous experience with same, as had friends for many years.

9.       Williamson, inter alia, illegalities, had marked on the return that he had mailed Elena a copy of the summons and complaint as the rule required on October 11, 2013, the same day he had left the process with me. That was our dismay, a perjury by Williamson, which, as stated, for respect of the sheriff, we did not want to have to deal with, but had no choice.

10.     Williamson or someone in his stead had affixed a signature to the return which contained several other glaring irregularities, in addition to the signed false statement that he had completed service by required mailing, same which was an absolute perjury on a court document. In addition the service of me for Elena in the first place was an implied perjury, that he had exhausted all reasonable diligence before serving me. Record will show this a perjury.

11.     The Summons itself was improper also, against state law e. g. did not conform to what rules required, etc. We had been served such illegal, irresponsible slipshod service of process in the past for many years, and others we knew claimed same type of civil summons process from Clay County Sheriff. Roan in first incident had received same type of illegal summons by an individual. Illegal civil process service is rampart in Clay County, by sheriff and others, for years.

12.     Because of the perjured return, illegal forms used in summons and return, plus all other irregularities in same, in addition to the trespassing without regard to our property rights, or

the state laws protecting same, plus the violation of our constitutional right to procedural due process before depriving Elena of her liberty, our property right to privacy on our property, and remembering the violations of our same rights by same perpetrators who violated our rights in first incident, herein this incident, the Clay Law Officials, we file this complaint.

13.    Plus the fact that as a matter of law, service of Elena had never been completed, pursuant to state law, but the perjured return filed by Williamson illegally alleged to the court, and plaintiff, on the record that she had been.

14.    Thus Elena reluctantly, but having no legal choice filed a timely motion challenging jurisdiction, exposing the entire illegal endeavor in detail, with all relevant law against all the illegal forms, procedures etc of Williamson, and the sheriff department, same also available herein, this action.

15.    In less than three (3) weeks after motion filed, the prestigious Plaintiff, whose rights had been violated by the sheriff' almost as much as Elena's had, and who had reason to expect damages from the sheriff also, pursuant to Mississippi law, unbelievably:  out of left field so to speak, dismissed the case without rhyme nor reason or notice to Elena or court so it seems, at least on the record.

16.    Thus the court did not have to rule on the serious state law, court rules, perjury on return, and constitutional violations /questions concerning Scott's illegalities in process effort. The Plaintiff, for undisclosed reason, saved them from having to face our motion claims, backed by law, with the documented proof, now on record, of the two (2) obvious, and/or plain to see outright perjuries and other illegalities committed, including other insinuated perjuries.

17.    Defendant Williamson, as the sheriff himself, as final policy maker for Clay County, violated the trespass laws of our state, as shown, as well as the Fourteenth Amendment procedural due process clause, in addition to M.R.C.P. rule 4 (d) (1) (B) service of process as shown inter alia state law violations committed on the return, which Williamson made other than the serious violations of perjury. Same used an improper illegal summons minus vital statements and entries required by *M.R.C.P.* Discovery will reveal much more and details.

18.    Williamson acted in an objectively unreasonable manner in violation of law, under color of law, to illegal trespass on our plainly posted private property, in violation of state law, also which guarantees our right to privacy on our property, even from deputies serving civil process. He did so either in the act of a ministerial duty, in which case he has no immunity, if that's what service of process is deemed to be.

33

18-a.   Or, if Williamson acted in his personal capacity, and committed the crimes under color of law, such objectively unreasonable acts, which his perjuries inter alia will be, then he has no qualified immunity shield therein either.

19.     No matter how, or in what capacity Williamson is deemed to have been acting, he and the sheriff are liable to Elena and me for damages in either capacity. Unless the sheriff can show trespassing, perjury inter alia violations, are not sheriff department customs, or training in service of process etc. Williamson is then liable officially.

19-a.   If Williamson is alleged to have been acting in his individual capacity, he is not shielded by qualified immunity for perjury on the return, the commission of a crime, and trespassing, the commission of a crime, which no objectively reasonable law official would have done.

20.     Since Williamson's serving of process, pursuant to Mississippi is/was same as sheriff serving summons and making return,  and  since the sheriff in his official capacity is the final policy maker on all legal matters/decisions in the county, then the sheriff is liable herein as the county, because of the decisions of Williamson.

20-a.   Thus, If his acts were the ministerial acts of service of process on Elena, done in a negligent, fraudulent manner, by a perjury inter alia crimes against me and her, then neither sheriff nor Williamson have official qualified immunity, since the sheriff has condoned Williamson's illegal acts, by his inaction. He has not fired or disciplined Williamson, or filed any criminal charges against Williamson, whose actions were crimes by sheriff, if condoned by sheriff, as herein this case. By Mississippi Law, sheriff as his deputies are responsible for, and are to be contacted for trespassing inter alia. Thus, if sheriff trespasses, who do you call?

21.     If Williamson is deemed to have been serving the process in his official capacity only, then regardless of what the sheriff claims about his policies, customs, practices, or training : To commit perjury on a return is so unreasonable and outrageous, that it is hard to imagine a reasonable deputy process server committing such a glaring perjury on a return, and filing same in court completely unabashed, unless it was the custom, practice, policy etc of sheriff, and Williamson had no qualms about what he did.

22.     If on the other hand, it wasn't the custom, policy, practice etc, then Williamson made a personal decision against sheriff policy, practice, custom, usage etc, to commit the crimes in commission of doing his ministerial and/or discretionary duty, that no objectively reasonable deputy would/should do, thus is liable for his illegal acts, under that scenario, absent immunity, thus personally owes us damages

23.     However, if it is shown by Williamson in his defense, or in other discovery of sheriff process service records, that what Williamson did is what all process servers do as sheriff in clay

county, which I predict/know will be the case, then that will prove an illegal custom, usage, unconstitutional practice, and/or improper training, which makes the sheriff, thus county, liable to us for damages, because: Mississippi law charges a sheriff to serve process, and the sheriff is the final policy maker on all legal decision/matters in the county, thus to sue the sheriff in his official capacity is to sue the county making county liable for damages and punitive damages.

24      If Williamson commits perjury and trespass inter alia violations in service of process, and if sheriff condones said trespassing and perjured return of his deputy who acted as sheriff himself, which is the case herein then: the sheriff, thus the county is liable to us for damages for Williamson's violations. As further proof the deputy is same as sheriff in service of process, Mississippi Law mandates the deputy must affix the sheriff's signature on the return to signify the sheriff served the process e.g. Deputy Joe law, for/as Sheriff Jane Doe.

25.     In addition, the sheriff, and the deputy had a "duty" to know that deputies could not violate private posted property by state law for a civil lawsuit summons. That the M.R.C.P required a certain/particular required legal form for a legal summons form. That M.R.C.P. rule 4 required that service of summons by rule 4( b)(1) (B) was only legal after reasonable diligence to serve the named defendant personally had failed, was service to be left with spouse etc.

25-a.   To falsely suggest same on return was a perjury in itself also, thus there were two (2) clear perjuries committed by Williamson, as policy of sheriff, thus county.

26.     That it was possibly a felony,  a serious crime and was definitely a constitutional violation, inter alia State laws to be untruthful on the return and say you had exercised reasonable diligence, plus had mailed a copy of summons and complaint to the abode where the summons and complaint was left with the agreeable spouse, both which was untrue.

27.     That to violate the service of process, was to violate a persons' basic constitutional rights to freedom; to personal liberty; their constitutional right not to be dragged into court by illegal corrupt government officials by an illegal unconstitutional process service and return. That to do so was to violate a basic, treasured principle upon which our country was founded, and why Europeans came here. This, coming from American Indians, as we are, because: we also believe in and value these basic American principles of freedom, same we enjoyed before Europeans came.

28.     As stated hereinabove, we can attest to what we have stated about violations of process and state law by sheriff, same being sheriff's routine practice, from personal experience of our own family, who for the past 33 years have suffered numerous  illegal civil  process  served upon us in the same unconstitutional manner as in this instant case, the first incident herein just one example.

29.     We know from experience corrupt process service is a custom; an unconstitutional, standard practice by Clay County Sheriff Department et al., who simply follow the sheriff's illegal example. Just see first incident in this complaint` to see the sheriff department's value of personal private property rights. To see that when the sheriff decides for whatever reason he wants to ignore the constitution and dispatch his deputies to invade a citizens private property, hiding under the color of law, he has no qualms, doesn't give it a second thought because:

30.     The unconstitutional policy/custom/practice has gone on so long, has been so ingrained into the fabric of the sheriff's office, that same no longer even realizes it is operating outside of, trammeling upon the Constitution by its illegal practice of serving civil process i.e. , such as trespassing, serving process by illegal process forms, filing perjured process returns inter alia.

31.     Williamson had no idea he was violating our constitutional rights, but he was required to know, had a duty to know. He will be the first to tell you, that he was only blindly following sheriff policy just as he had been trained to do. Or, he was just following time worn illegal practices.  That every process he serves, has ever served, and served since Elena's, and every process server he knows at the sheriff department serves process the same way Elena served.

32.     Williamson will protest that he had been taught by the sheriff department, or by example, or followed time worn customs of the sheriff department, believing that he had a legal right to trespass to serve a civil summons; that he could ignore the reasonable diligence required, mark the return, file it, no matter the truth, and process served.

33.     He thought, because it was the custom, that he could serve a spouse and just mark the return in required space, even though same a perjury, and/or have someone else do it for him, no big deal at the sheriff's office, to fraudulently show:  that a mandated mailing had been made, when it hadn't because: he thought his leaving an extra copy of the summons and complaint with spouse, (me) which is what he did, (as was the custom to do), for me, to give to Elena, met his required duty by law to mail same instead, but it doesn't, but he was following the customs etc, etc at sheriff department.

34.     Such actions by Williamson could only be the result of a longstanding custom, usage, unconstitutional practice etc, of the Clay Sheriff. Most likely the sheriff himself is not aware of the illegalities of process he is responsible for, by law,  same having  gone on so long, same which he followed as a deputy, chief deputy and now as sheriff. This, however, does not relieve the sheriff from his responsibility to know that his deputy's service of process was/is illegal.

35.     The sheriff and Williamson will agree with same under oath in depositions inter alia discovery, or in any motion filed on their behalf, or commit other perjuries, which I doubt, since Sheriff Scott is an honorable man.

35-a.    Past records of sheriff civil process service on files in court and sheriff department will reveal, if same investigated, as should happen, illegal process service by Clay County Sheriff et al, is a longstanding practice, custom, just the way civil process is served in Clay County.

36.    Interrogatories, depositions, admission questions documents, records, all will show the truth of this complaint is the tip of the iceberg. Sheriff Scott will agree to what we have shown above, and fix it if given the chance, we sincerely believe, minus illegal advice to his detriment.

37.    Defendant Williamson and Scott are liable to Elena for damages for the violation of her Fourteenth Amendment procedural due process rights inter alia state statutes, not to be deprived of her liberty as they did by Two (2) perjuries described hereinabove, under color of law, in personal capacities.  There, is no rational basis for their actions.

38.    Defendants Williamson and Scott are liable to Elena for damages for the violation of her Fourteenth Amendment procedural due process rights inter alia in their official capacities pursuant to the customs, unconstitutional practices, usages, and ordinary way same serves civil process. There is no rational basis for their actions.

39.    Defendants Williamson and Scott are liable to Elena for damages for violation of her Fourteenth Amendment procedural due process rights inter alia by gross negligence in the ministerial duty of serving civil process in official capacities.

40.    Defendant Williamson and Scott are liable to us for damages for malicious, criminal trespassing on our private property under color of law, to commit a crime, a violation of state statutes as shown hereinabove, and procedural due process in official and personal capacities.

41.    Defendant Williamson and Scott are liable to us, for damages for inflected mental pain and suffering.  Their actions are outrageous, such that punitive damages are due.

### PRAYER

We pray for actual and punitive damages in an amount to be determined by a jury, in Both Incidents shown hereinabove, for all reasons shown. We also ask for reasonable legal expenses and fees, for cost of filing this complaint.

Respectfully submitted,

David Whitfoot, pro se
5518 Bilbo Cartee, Rd.
Cedar Bluff, MS 39741, (ph,) 662-769-1223

Elena Whitefoot, pro se
Address, ph. Same as David